UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

THE FEISLEY FARMS FAMILY, L.P.,

    Plaintiff,

v.

    Case No.: 2:14-cv-146
    CHIEF JUDGE EDMUND A. SARGUS, JR.
    Magistrate Judge Deavers

HESS OHIO RESOURCES, LLC, *et al.*,

    Defendants.

## OPINION AND ORDER

This matter is before the Court upon the cross motions for summary judgment of Defendant, Hess Ohio Resources, LLC ("Hess" or "Defendant") and Plaintiff, The Feisley Farms Family, L.P. ("Feisley" or "Plaintiff"). Hess moves for summary judgment as to Feisley's Complaint and on Counts I and IV of the Counterclaim. (Doc. 33). Hess also moves for an order tolling the primary term of the lease. Feisley moves for summary judgment as to Counts I and III of the Complaint. (Doc. 40). Feisley also moves for leave to file an amended complaint. (Doc. 46).

While this case was pending, the Court of Appeals for the Sixht Circuit addressed the same issue involving identical lease terms. *Kelich v. Hess Corp.*, Nos. 14-3411, 14-3431, 2014 WL 7331014 (6th Cir. Dec. 23, 2014). The decision, which involved an appeal from this Court, effectively forecloses the relief sought by the plaintiff. This Court is constrained to follow the decision of the Court of Appeals, particularly in light of the fact that terms of the lease at issue in this case are the same as the terms addressed in *Kelich*. For the following reasons, the **GRANTS**

Hess' Motion for Summary Judgment, **DENIES** Feisley's Motion for Summary Judgment, and **DENIES** Feisley's Motion for Leave to File an Amended Complaint as moot.

## I. BACKGROUND

This case arises out of an oil and gas lease (the "Lease") between Mason Dixon Energy, Inc. ("Mason Dixon") and Feisley concerning approximately 306 acres of land in Belmont County, Ohio. Feisley is an Ohio limited partnership that manages land and investments owned by the Feisley family. (Doc. 32, John Feisley Dep. at 6–7 ("Feisley Dep.")). John Feisley and Marian Feisley are general partners of Feisley, while Geoff Feisley and Ann Holmes are limited partners. (*Id.*). Mason Dixon, now Percheron Energy, is a land management company and a former defendant in this case. (Doc. 2, Complaint at ¶ 10). Mason Dixon and Feisley executed the Lease on December 18, 2006. (*See*, Doc. 33-1, Lease at 1). The Lease provided for an initial five year primary term that could be renewed or extended in two ways: 1) as long "as oil or gas, or either of them, is produced from said land by the Lessee; and 2) for five years, "if on or before the expiration of the primary term of this lease, Lessee pays or tenders to the Lessor or to the Lessor's credit, the sum of Twenty and 00/100 dollars per net mineral acre prior." (*Id.* at ¶ 2). The Lease also had a provision which would terminate the Lease if drilling operations were not commenced within twelve months of the Lease's execution. (*Id.* at ¶ 4). The lessee could delay said termination through "Delay Rental Payments." (*Id.*). Specifically, a delay rental payment of five dollars per acre would extend the drilling period for twelve months. (*Id.*). The Lease provides, "Thereafter, annually, in like manner and upon like payments or tenders, the commencement of drilling operations may be further deferred for periods of twelve (12) months each during the primary term." (*Id.*).

Additionally, the Lease has a forfeiture provision relevant to the claims in this case. Paragraph nine states:

> Failure to pay or error in paying any rental or other payment due hereunder shall not constitute a ground for forfeiture of this lease and shall not affect Lessee's obligation to make such payment, but Lessee shall not be considered in default on account thereof until Lessor has first given Lessee written notice of the non-payment and the Lessee shall have failed for a period of thirty (30) days after receipt of such notice to make payment.

(*Id.* at ¶ 9).

On March 16, 2007, Feisley received its first payment under the Lease, an upfront or bonus payment of $6,117.24. (Doc. 32, John Feisley Dep. at 37, Ex. C). In 2008, Mason Dixon assigned the Lease to Marquette Exploration, LLC which then became Hess. (*See* Doc. 27, Aug. 25 Op. & Order at 1). Neither Hess nor any of its predecessor Lessees ever commenced drilling operations on the land at issue in this case. (Doc. 32, Feisley Dep. at 42). Delay rental payments, however, have been tendered to Feisley in an effort to extend the Lease. It is undisputed that Defendant or its predecessors tendered delay rental payments on March 16, 2007, November 12, 2007, November 10, 2008, and October 26, 2009. (*Id.* at 37–40, 42–43, Exs. C–G). All delay rental payments for the initial five-year term of the Lease were properly tendered and accepted. (*Id.*). Because the initial term expired on December 17, 2011, a $6,117.24 payment was tendered to Feisley on November 18, 2011, to affect a renewal/extension of the primary term. (Doc. 32, Feisley Dep. at 40–42, Ex. H).

On April 17, 2012, Harry White, an attorney for Feisley, sent a letter to Pettigrew & Pettigrew Land Services ("P&P"). (Doc. 32, Feisley Dep. at 40–42, Ex. I). P&P was an agent Marquette used to, "perform[] the land administrative functions," for oil and gas leases in the area. (Doc. 39, Phillips Dep. at 16). After purchasing Marquette, Hess also used P&P until Hess set up its own system for performing those administrative functions. (*Id.*). Mr. White's letter

3

enclosed the check for $6,117.24 tendered on November 18, 2011, and informed P&P, "This check is being returned for the reason that The Feisley Farms Family Limited Partnership considers said Lease to now be void and of no legal effect." (Doc. 32, Feisley Dep. at Ex. I). After receiving the check, Hess voided the check and has not reissued it. (*See* Doc. 39, Phillips Dep. at 22–24).

P&P and/or Hess continued to send delay rental payments on November 12, 2012, November 12, 2013, November 10, 2014, and December 31, 2014. (Doc. 32, Feisley Dep. At 55–57, Exs. J–K; Doc. 33-3, Phillips Decl. at ¶¶ 2–3; Doc. 33-4, Kloss Decl. at Ex. 1). No delay rental payment was sent in 2011. However, a letter from Mr. Kloss, Hess' counsel, indicates that the December 31, 2014, delay rental payment was intended to account for the year 2011 delay rental payment in light of a recent Sixth Circuit Court of Appeals case. *Kelich*, 2014 WL 7331014; (Doc. 33-4, Kloss Decl. at Ex. 1).

Feisley originally brought this case in the Belmont County Court of Common Pleas. Based on the existence of complete diversity between the parties, Hess then removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. (Doc. 2, Cmpl.). Feisley's case consists of four claims against Hess: 1) declaratory relief that the Lease expired by its terms on December 18, 2012; 2) injunctive relief to prohibit Defendants from accessing the property; 3) slander of title; and 4) tortious interference with a business relationship. (*Id.*). Hess brought a counterclaim against Feisley for the following claims: 1) declaratory judgment that the Lease is valid and enforceable; 2) breach of contract; 3) unjust enrichment; 4) declaratory judgment that the Lease is tolled; and 5) reformation of the Lease due to mistake. Also before this Court is Feisley's Motion for Leave to File an Amended Complaint which would add a declaratory judgment claim

4

that the Lease was void because of Hess' alleged failure to make a required delay rental payment in 2011.

## II. STANDARD OF REVIEW

Both parties moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's purpose in considering a summary judgment motion is not "to weigh the evidence and determine the truth of the matter" but to "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists if the Court finds a jury could return a verdict, based on "sufficient evidence," in favor of the nonmoving party; evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249-50.

The party seeking summary judgment shoulders the initial burden of presenting the court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (after burden shifts, nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury"). In considering the factual allegations and evidence presented in a motion for summary judgment, the Court must

"afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party." *Id.*

That the parties have filed cross-motions for summary judgment does not alter the Court's standard of review. *See Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) ("[T]he standards upon which the court evaluates the motions for summary judgment do not change simply because the parties present cross-motions."). Thus, in reviewing cross-motions for summary judgment, the Court must still "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994).

### III. DISCUSSION

The validity of the Lease depends on whether Hess properly extended the primary lease term and paid all required delay rental payments. This case essentially revolves around three questions: 1) did Hess extend the primary term for an additional five years when it tendered a bonus consideration payment of $20 per acre to Feisley; 2) if so, did Hess make all required delay rental payments; and 3) is Hess entitled to equitable tolling of the Lease based on Feisley's actions disclaiming the Lease? The Sixth Circuit Court of Appeals has recently addressed the first two issues while reviewing an identical lease in *Kelich*. *See Kelich*, 2014 WL 7331014.

### A. Nature of the Extension

Feisley claims that the Lease expired on December 18, 2012, one year after the initial five year primary term expired and thus, they are entitled to declaratory and injunctive relief to that effect. Further, Feisley claims that the primary term extension payment in paragraph 2 of the Lease creates a new period called the secondary term which does not allow Hess to make delay rental payments to extend the Lease. Defendant argues that *Kelich* has considered and denied Feisley's argument.

6

In *Kelich*, the Sixth Circuit analyzed a lease with identical lease language to the instant case. The question presented to the court was the same as in this case:

> Does the clause in the second sentence of paragraph 2—i.e., "said extension to be under the same terms and conditions contained in this lease"—incorporate during "the additional term of five years" Hess's right to delay drilling by paying the "delay rental payments" provided for in paragraph 4?

*Id.* at *2. The Sixth Circuit unambiguously decided that Hess could continue to pay delay rental payments after the extension payment was made in the fifth year:

> We therefore conclude that the "same terms" language of paragraph 2 incorporates the delay rental payments of paragraph 4 and thus extends Hess's right to drill during the second five-year term so long as the oil company makes the annual delay rental payments.

*Id.*

Feisley's only argument against a valid extension is that Hess voided the bonus check and has not reissued it. The Lease states, "if on or before the expiration of the primary term of this lease, Lessee **pays or tenders** to the Lessor or to the Lessor's credit, the sum of Twenty and 00/100 dollars per net mineral acre prior." (Doc. 33-1, Lease at ¶ 2 (emphasis added)).

This Court has recently addressed the interpretation of oil and gas leases:

> The parties do not dispute that Ohio contract law governs the interpretation of the oil and gas leases. In interpreting a contract under Ohio law, the Court must "ascertain the intent of the parties." *City of St. Marys v. Auglaize Cnty.*, 115 Ohio St.3d 387, 390, 875 N.E.2d 561, 566 (Ohio 2007). The law presumes the intent of the parties "to reside in the language they choose to use in their agreement." *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 313, 667 N.E.2d 949, 952 (Ohio 1996). When interpreting the language of a contract, words and terms are "given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Lo–Med Prescription Servs. v. Eliza Jennings Grp.*, No. 88112, 2007 WL 1290078, at *3–4 (Ohio Ct. App. May 3, 2007) (citing *Shifrin v. Forest City Enters.*, 64 Ohio St. 3d 635, 638, 597 N.E.2d 499, 501 (Ohio 1992)). When the terms of a contract "are not ambiguous, courts are constrained to apply the plain language of the contract." *City of St. Marys*, 115 Ohio St.3d at 390.

*Baile-Baired, LLC v. Magnum Land Services, LLC*, 19 F. Supp. 3d 760, at 766 (S.D. Ohio 2014).

The use of the language "pays or tenders" was also recently reviewed by this Court in a nearly identical lease provision:

> Ohio case law instructs that "'[t]ender' generally means to offer or hold something out, especially in fulfillment of the requirements of law." *Vannoy v. Capital Lincoln–Mercury Sales, Inc.*, 88 Ohio App.3d 138, 147, 623 N.E.2d 177, 184 (4th Dist. Ct. App. 1993). Ohio law also provides that "[t]he essential characteristics of a tender are an unconditional offer to perform, coupled with ability to carry out the offer and production of the subject matter of the tender." *Walton Commercial Enters., Inc. v. Ass'ns, Conventions, Tradeshows, Inc.*, No. 91AP1458, 1992 WL 132451, at *2 (Ohio 10th Dist. Ct App. June 11, 1992). Thus, "[w]here one party tenders the other '. . . an amount reflecting the entirety of its legal obligation, that obligation is fulfilled . . . .'" *Id.* (quoting *Parker v. Unigard Ins. Co.*, 44 Ohio App.2d 199, 201, 337 N.E.2d 181, 183 (Ohio 1st Dist. Ct. App. 1975)). The end result is that the lease plainly and unambiguously allowed Phillips to renew by offering its renewal check.

*Phillips Exploration, LLC v. Tomich*, No. 2:11-cv-01081, 2013 WL 3983643 (S.D. Ohio Aug. 1, 2013) (quoting *Phillips Exploration, Inc. v. Reitz*, No. 2:11-cv-920, 2012 WL 6594915, at *3 (S.D. Ohio Dec. 18, 2012)). "Specifically, the above definition of tender is both consistent with Ohio law and the common definition of tender as 'an unconditional offer of money or performance to satisfy a debt or obligation.'" *Tomich*, 2013 WL 3983643 at *4 (quoting *Black's Law Dictionary* (9th ed. 2009)). The language "pays or tenders" necessarily means that acceptance is not required. *Id.* (finding that if acceptance was necessary, the phrase "or tenders" would be rendered "mere surplusage.") (citing *Reitz*, 2012 WL 6594915, at *3)

Feisley does not argue that Hess failed to tender the extension payment. Instead of accepting the tendered check, Feisley chose to return it and inform Hess it considered the Lease forfeited. Mr. Feisley does not dispute that Hess tendered the check and that Feisley Farms received the check. (Doc. 32, Feisley Dep. at 43). Feisley's decision to return the check with Mr. White's letter cannot serve to defeat Hess's unilateral tender of the bonus payment for the extension under the terms of the contract. Therefore, summary judgment is appropriate as to Feisley's first and second claims for declaratory and injunctive relief.

B.   **Timeliness of Delay Rental Payments**

Now that the Court has determined that Hess was entitled to make delay rental payments following the tendering of the extension payment in 2011, the question left for the Court is whether Hess has properly paid the delay rental payments since that time, and if not, what effect the failure to pay has on the Lease. In *Kelich*, the Sixth Circuit determined that a delay rental payment was due from Hess to the Lessor at the end of year five. *Kelich*, 2014 WL 7331014 at *2. In this case, the end of year five occurred in 2011. There is no dispute that Hess did not make a delay rental payment in 2011. Feisley's proposed Amended Complaint attempts to add a claim based on Hess' failure to make the 2011 delay rental payment. Thus, Feisley argues the Lease terminated on its own terms after Hess failed to pay the 2011 delay rental payment. Hess argues that neither party was aware a 2011 delay rental payment was due until the Sixth Circuit's decision in *Kelich* and that the Lease did not terminate because of Paragraphs 9 and 16 of the Lease. Hess further asserts that the payment dated December 31, 2014 constitutes the delay rental payment for 2011.

> Paragraph 9 controls this situation. Paragraph nine reads:
>
> Failure to pay or error in paying any rental or other payment due hereunder shall not constitute a ground for forfeiture of this lease and shall not affect Lessee's obligation to make such payment, but Lessee shall not be considered in default on account thereof until Lessor has first given Lessee written notice of the non-payment and the Lessee shall have failed for a period of thirty (30) days after receipt of such notice to make payment.

(Doc. 33-1, Lease at ¶ 9). The provision clearly states that failure to pay a delay rental payment "shall not constitute a ground for forfeiture." The Sixth Circuit has already rejected the argument that the Lease terminates on its own and found that position not well-taken. "This notice provision clearly applies to circumstances in which Hess paid for the second five-year term but failed to include a payment also due under paragraph 4 . . . Under the terms of the lease,

9

this apparent 'error in paying' cannot result in 'forfeiture' until Hess receives notice and has an opportunity to correct the error." *Kelich*, 2014 WL 7331014 at *2. Thus, there are two requirements before the Lease can be forfeited under Paragraph 9: 1) notice of the failure to pay and 2) an opportunity to correct the error.

Feisley argues the April 17, 2012, letter from attorney Harry White on April 17, 2012, constituted notice and an opportunity to cure. Defendant disagrees. For the following reasons, the Court agrees with Defendant and finds Plaintiff's argument unconvincing.

In *Baile-Bairead*, this Court considered a nearly identical notice provision and a similar letter alleging forfeiture. *Baile-Bairead*, 19 F. Supp. 3d at 769. As in this case, the leases in *Baile-Bairead*, "expressly provided that, in the event of non-payment, the lessee would have thirty days from the lessor's written notice to cure and tender payment." *Id.* In a letter to the lessee, the lessor wrote "the purported oil and gas leases between Baile-Bairead LLC ('Lessor') and Magnum Land Services, LLC ('Lessee') dated September 22, 2006, which have allegedly been assigned to Belmont Resources, LLC, have expired and been forfeited." *Id.* at 770. This Court held, "Baile-Bairead [the Lessor] was contractually obligated to provide Belmont [the Lessee] some length of time—at least thirty days—to cure its deficiency. It violated this obligation by refusing to do so." *Id.*

The same is true in this case. Paragraph 9 required Feisley to (1) inform Hess of the missed payment and (2) provide Hess an opportunity to cure. Feisley's letter did neither. Instead, it simply stated, "This check is being returned for the reason that The Feisley Farms Family Limited Partnership considers said Lease to now be void and of no legal effect." (Doc. 32, Feisley Dep. at 40–42, Ex. I). There was no opportunity for Hess to cure when Feisley insisted the Lease was void. Further, informing Hess that the Lease was void cannot constitute

10

notice of a missed payment. Feisley's notice simply informed Hess that Feisley had no intention of abiding by the Lease. Accordingly, Feisley's letter does not constitute notice under Paragraph 9 of the Lease and the Lease is not forfeited.

The first time either party had actual notice that Hess was required to pay a delay rental payment in year five was on December 23, 2014, when the *Kelich* decision was released. Ms. Phillips, an employee of Hess, testified that in 2011, "it was not our belief that a delay rental payment was due in the same year that an extension bonus payment was due." (Doc. 39, Phillips Dep. at 14). Similarly, prior to *Kelich*, Mr. Feisley testified that Feisley received all payments to which it was entitled under the initial five year term of the Lease and that during the five-year term. (Doc. 32, Feisley Dep. at 42, 48). Hess tendered a delay rental payment within 30 days of the *Kelich* decision. (Doc. 33-4, Kloss Decl. at Ex. 1). The delay rental payment complies with the terms of the lease when considered in tandem with the *Kelich* decision.

Therefore, the Court determines that the Lease is still valid and that Hess has made all necessary delay rental payments and bonus extension payments due under the Lease. Summary judgment is **GRANTED** as to Hess' claim for declaratory judgment.

Additionally, this analysis renders Feisley's Motion for Leave to File an Amended Complaint moot. Feisley's proposed Amended Complaint seeks to add a claim for a declaratory judgment that the Lease was void due to Hess' failure to pay the 2011 delay rental payment. As the Court has ruled that the missed delay rental payment did not forfeit the Lease, Feisley's Motion for Leave to File an Amended Complaint is **DENIED** as moot.

### C. Slander of Title

Feisley's third cause of action relies on a finding that the Lease is no longer valid. However, to sustain a slander of title claim, Plaintiff must show Defendant's alleged statements were false. *Green v. Lemarr*, 139 Ohio App. 3d 414, 431 (Ohio Ct. App. 2000). Because the

11

Court has ruled that the Lease is valid, Plaintiff cannot satisfy this requirement because the allegedly slanderous statement was not false. Accordingly, Hess is entitled to summary judgment as to Plaintiff's third claim for relief.

**D.     Interference with a Business Opportunity**

Feisley's claim for interference with a business relationship also must fail in light of the finding that the lease terms are valid. Interference with a business relationship requires: "(1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." *Chandler & Assoc., Inc. v. America's Healthcare Alliance, Inc.*, 125 Ohio App. 3d 572, 583, (Ohio Ct. App. 1997). Feisley's Complaint indicates the alleged actions of Defendant are that, "Defendant has and continues to allege they have a valid and enforceable lease with Plaintiff." (Doc. 2, Cmpl. at ¶ 37). As the Court has previously held, Hess does have valid enforceable lease with Feisley. Hess has not committed any wrongful act that could act as a basis for this claim. Thus, summary judgment is appropriate as to Feisley's fourth claim for relief.

**E.     Tolling**

Defendant asks this Court for an order tolling the primary term of the Lease from the date Mr. Feisley said he would have excluded Hess from his land because he believed the lease to be void—December 17, 2011—until final disposition of Feisley's claims, including any appellate proceedings. Feisley argues that tolling to December 17, 2011, is inappropriate because Hess made no attempt to act on the Lease on the Feisley land before Feisley filed the complaint on January 9, 2014.

A lessee's right to equitable tolling of an oil and gas lease when a lessor challenges the validity of a lease is "well-established in Ohio." *Griffith v. Hess Corp.*, No. 2:14-cv-00337, 2014 WL 1407953, at *5 (S.D. Ohio Apr. 11, 2014); *See also Kelich v. Hess Corp.*, No 2:13-cv-140,

ECF No. 50, at 3. (S.D. Ohio April 15, 2014) (Watson, J.) (holding tolling appropriate where lessor challenged the validity of the lease and prevented productive use of the property by the lessee); *Chesapeake Exploration, L.L.C. v. McClain*, No. 2:13-cv-0445, ECF No. 30, at 6–8 (S.D. Ohio July 30, 2013) (Frost, J.) (finding tolling appropriate where state court suit and other actions expressed desire to prevent the lessee from entering the land); *Wiley v. Triad Hunter LLC*, No. 2:12-cv-00605, ECF No. 172, at 3 (S.D. Ohio June 5, 2013) (Sargus, J.); *Three Waters, LLC v. Northwood Energy Corp.*, No. 2012-042 (Monroe County C.P. June 12, 2012) (holding defendant entitled to tolling where filing of lawsuit had "direct impact on [d]efendant's ability to exercise its rights under the leases."). Tolling should run "during the time such claims of forfeiture are being asserted." *Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324, 1341 (10th Cir. 1982). Equitable tolling in this situation is also supported by case law outside of Ohio. *See id.*; *Kelich v. Hess Corp.*, No 2:13-cv-140, ECF No. 50, at 3. (S.D. Ohio April 15, 2014) (Watson, J.) (collecting cases).

In this case, there is ample evidence that Feisley first claimed forfeiture prior to filing the Complaint in January 2014. Feisley's attorney's letter to Hess on April 17, 2012, asserted that the Lease was forfeited. Further, Feisley returned the tendered delay rental payment checks in each year following the letter, maintaining the Lease was forfeited. (Doc. 32, Feisley Dep. 55–57). Although Mr. Feisley made clear that he would have barred Hess from entering the Feisley properties on December 17, 2011, there is no evidence Hess knew of Mr. Feisley's intentions or that Hess attempted and/or was denied the ability to exercise its right under the Lease until Hess received the April 17, 2012 letter. Therefore, the Court finds that the Lease is tolled from April 17, 2012, the date of Mr. White's letter, to the date of this Opinion and Order.

## IV. CONCLUSION

Based on the foregoing, Hess's Motion for Summary Judgment as to the Feisley Farm's Complaint and as to Count I and IV of the Hess' Counterclaim is **GRANTED**.  Plaintiff's Motion for Summary Judgment is **DENIED**.  Plaintiff's Motion for Leave to File an Amended Complaint is **DENIED** as moot.  The Clerk shall **REMOVE** Documents 33, 40, and 46 from the Court's pending motions list.

**IT IS SO ORDERED.**

9-30-2015
**DATED**

**EDMUND A SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**